### WAGNER *et al.* v. PHILLIPS.

Plaintiffs, having sent money to defendant to invest in real estate, and
either authorized or ratified all he did in the matter, including his ad-
vancement of funds in part payment, and taking deed in his own name,
have no claim against him by reason of the investment proving un-
profitable; there being no fraud or bad faith on his part.

(Opinion filed January 10, 1900.)

Appeal from circuit court, Minnehaha county. Hon. JOS-
EPH W. JONES, Judge.

Action by Thomas Wagner and another against Nyrum E.
Phillips. Judgment for defendant. Plaintiffs appeal. Af-
firmed.

The facts are stated in the opinion.

*A. A. Polk* and *Aikens & Judge* for appellants.

A purchase by an agent, for his principal with the money
of the principal, although irregular, with ratification, vests the
title to the property in the principal, but a purchase by the
agent for himself partly with the principal's money, with rati-
fication, vests the title to the money in the agent and it be-
comes a loan, or money had and received. Mehem Agency,
§§ 127, 167, 154, 129; 1 Lawson's Rights and Rem. § 32; Roby
v. Cossit, 78 Ill. 638; Edminster v. Sturges, 30 N. W. 621;
Smith v. Stromson, 45 Ia. 645.

*A. B. Kittredge,* for respondent.

If respondent had claimed to have bought the property for himself and not for appellants, the same having been purchased with their money, the law would have declared that he held it in trust for appellants, and the courts would have compelled its conveyance to them. Kramer v Drusterman, 37 Min, 469; Reitz v. Reitz, 80 N. Y. 538; Rose v. Hayden, 35 Kan. 106; Fideler v. Norton, 30 N. W. 128; Mechem Agency, § 457.

A direct proceeding with an express intent to ratify is not necesary to a ratification. It may be done indirectly and by acts of recognition or acquiesence or acts inconsistent with repudiation or disapproval. Gold Mining Co. v. Bank, 96 U. S. 640; Marsh v. Whitmire, 21 Wall. 178; Mathews v. Fuller, 123 Mass. 446; Williams v. Meritt, 23 Ill. 623. Mechem Agency, § 153.

FULLER, P. J. To recover $1,750, plaintiffs brought this action, and now appeal from a judgment for costs entered upon a verdict in favor of defendant, and from an order overruling a motion for a new trial.

Briefly stated, the facts, either conceded or rightfully found by the jury, are these: Appellants, who reside in Ohio, and are the brother and sister of respondent's wife, sent $2,000 to respondent, to be employed by him for their benefit in real estate ventures in the city of Sioux Falls and vicinity. No special directions appear to have been given, and in the exercise of his discretion he purchased certain city property on the 17th day of January, 1889, for $1,600, paying $1,150 of appellant's money thereon, and assuming, as a part of the purchase price, a mortgage of $450, which, when paid left $400 of appel-

lant's money in respondent's hands to be invested. Soon afterwards he sold this property at a net gain to appellants of $500, and reported to them the sale and terms of payment, which were $850 cash, and $1,200 deferred,—one-half payable in one year, and balance in two years; interest, eight per cent. This money was subsequently paid to respondent, who remitted $1,-000 to appellants, less certain taxes he had paid for them on other property; and a recovery of the balance is the object of this suit.

As a defense, respondent offered testimony tending to show that, at about the time of making the investment above mentioned, he purchased certain other lots in the city of Sioux Falls, for $1,850, taking title in himself, and in settlement for which he paid at the time $1,200, and assumed a mortgage of $650, which he subsequently satisfied, leaving the property free of incumbrance. Not having at the time of the purchase sufficient of appellant's money to pay the $1,200 required, respondent used some of his own money, and deducted the amount from money of theirs coming into his hands later by virtue of the agency. At the time respondent reported particulars of the sale of property first bought, he wrote appellants, in part, as follows: "What shall I do with your money? Property is getting high, and it may still go up; but, if I see a good chance, will try again, or you can loan it at eight per cent or better. If I see that our prospects are right for capital, I shall not hesitate to invest all you have; for if we do get there will be a big rush to buy, and if we fail it may stand about as it is, but slow sales." In response to this they wrote him, in substance, to purchase this identical property for them upon such terms and in such manner as would, in his judgment, best subserve their

interests; and as soon as the transaction was closed, he advised them as to what had been done.   Concerning the matter and a letter,  the original of which  is  presumptively  in  appellant's possession, and of which  no  copy  was kept, respondent testified as follows: "I said in the letter 1 had purchased this piece of·property, and I had put into  it  so  much money, and there was a mortgage of $650 against it, and I  had put in $1,200 in cash.   *   *   *   I advised these plaintiff's at the time, fully, in regard  to  what I had done in these matters   *   *   *   With a $650 mortgage against it, they did not  have  money  enough to pay off.   I took up that mortgage of $650.   I did not hear from them in regard to this piece of  property for  quite a  while.  Then they wanted some money.   When I obtained some money from the gentlemen  on  the  mortgage, I sent them $1,000.   It began to be hard times.   I did not try to beat them out of anything.   I paid $1,850 for it and taxes and interest on it.   This three-lot property is clear of mortgage to-day.   *   *   *   There is not one dollar due them.   *   *   *   In  January and  June, 1889, these three lots were worth $2,000,   I  bought this property in my name.   It was not transferred  or  deeded  to  them until after this suit was commenced."   Cross-examination: "Q. When did you sign the deed, and execute it?   A.   I don't remember the date.   I think it was after the suit was commenced It was put on record.   I don't think I ever sent the deed to them at all.  · The only delivery of that deed I ever made was  to  deliver it to the register of deeds  here."

No claim of fraud  or  bad  faith  on  respondent's  part  is made, and the  record  clearly  shows  that  no  limitation  was placed upon his agency, as  to  the  manner  of  making  investments on appellants' behalf; the object  being  to  speculate in

real estate, by allowing him to exercise such discretion and authority in its purchase and sale as, in his judgment, would be profitable to them. The relation of the parties, the nature of the business, and the methods employed with their full knowledge, when considered with all other facts and circumstances disclosed, by the record, are sufficient to justify an inference on the part of the jury that appellants either authorized, acquiesced in, or subsequently approved and ratified, all that respondent did with reference to the purchase of real estate, in cluding the advancement of his funds in part payment therefor, and the taking of the deed in his own name. Having thus authorized or sanctioned the acts of their agent, the fact that one of the transactions appears to be unprofitable affords no relief. No errors of law occurred at the trial. Though controverted, the evidence is sufficient to sustain the verdict, and the judgment appealed from is affirmed.